UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANIEL J. RUIZ AND GEORGIOS                CIVIL ACTION
RUIZ

VERSUS                                     NO.  06-5640

STATE FARM FIRE AND CASUALTY               SECTION "R"(5)
COMPANY


This Document applies to the following civil actions in the
Eastern District of Louisiana: 06-5640, 06-5899, 06-6522, 06-
7248, 06-7416, 06-8560 c/w 06-8580, 06-8668, and 06-9635.


**<u>ORDER AND REASONS</u>**

Before the Court are motions to remand the above-listed

cases.  Because these motions concern identical questions of law,

the Court has consolidated its ruling in these matters for the

sake of efficiency.  For the following reasons, the Court GRANTS

plaintiffs' motions in Civ. Docket Nos. 06-8560 and 06-8668, and

DENIES the other motions.


**I.   BACKGROUND**

Plaintiffs in these cases are Louisiana property owners who

suffered damage to their property during Hurricane Katrina and

who have sued their insurance providers under their homeowner's or commercial property policies.  Plaintiffs in all of the actions listed above have sued both their insurance providers and the agents who sold and/or renewed their policies.  The insurance providers lack citizenship or a principal place of business in Louisiana.  The insurance agents are citizens of Louisiana.  As such, the parties are not completely diverse, a requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332.  *See McLaughlin v. Mississippi Power Co.,* 376 F.3d 344, 353 (5th Cir. 2004).  Plaintiffs filed their claims in Louisiana state court, and defendants then removed them.  Plaintiffs have filed motions to remand these matters to state court.  In all of the cases, defendants assert that federal jurisdiction is proper under diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the nondiverse insurance agent defendants have been joined improperly.  When the Court finds that it has jurisdiction over a case on this basis, the Court need not address defendants' alternative theories for why federal jurisdiction is appropriate in that matter.


**II.  LEGAL STANDARDS**

   **A.  Applying Louisiana Law**

   Because jurisdiction is based on diversity, Louisiana law

2

applies to the substantive issues before the Court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Louisiana, the sources of law are legislation and custom. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id*. (*quoting* La. Civ. Code art. 1*)*. In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id*. (*quoting Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999)). To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**B. Removal**

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears

the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995). Though the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

### C. Improper Joinder

When a nondiverse party is properly joined as a defendant, a defendant may not remove under section 1332. However, a defendant may remove by showing that the nondiverse party was improperly joined. *Smallwood v. Il. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003). Because the doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one. *Id*. Improper joinder may be established by showing: (1) actual fraud in

4

pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant.[1] *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003). In *Ross*, the Fifth Circuit clarified the standard for finding improper joinder when a defendant alleges that plaintiff is unable to state a claim against the nondiverse defendant. *Id.* at 462-63. The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant. *Id.* *(citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). This means that there must be a reasonable possibility of recovery, not merely a theoretical one. *Id.* The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact

_____

[1] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases, causing no shortage of confusion.

for his or her claim.  *Id.* (*citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).  In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party. *Id*.

## III. DISCUSSION

### A.   06-5640: Ruiz v. State Farm

Plaintiffs Daniel and Georgios Ruiz sued State Farm, their homeowners insurer, and Mel Nelson, their insurance agent, after their home was rendered a total loss by Hurricane Katrina.  State Farm, a foreign insurer with neither citizenship nor a principal place of business in Louisiana, contends that Nelson, who is a person domiciled in Louisiana, is improperly joined because there is no reasonable basis on which plaintiff can state a claim under Louisiana law against him.[2]  Specifically, defendants assert that

---

[2] Plaintiffs' contention that defendants did not properly raise the issue of peremption in their notice of removal, and thus should be barred from asserting the issue now, is wholly without merit.  Paragraph XV of the removal notice alleges that Nelson is improperly joined because "there is no reasonable basis for predicting that the state law might impose liability on" him.

plaintiffs' claims against Nelson for failure to procure adequate coverage are perempted by the terms of La. Rev. Stat. § 9:5606, a statute establishing peremptive periods for contract and tort actions brought against insurance agents.  The statute provides as follows:

> No action for damages against any insurance agent . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. § 9:5606.  The statute became effective in July 1991, and it does not apply if the plaintiff's cause of action accrued before its effective date.  *See* 1991 La. Sess. Law Serv. Act 764 (West); *Roger v. Dufresne*, 613 So. 2d 947, 949-50 (La. 1993).  Under the express terms of the statute, regardless of whether plaintiffs sued within one year of discovering their cause of action, the claim is still perempted if plaintiff does

---

Although peremption under La. Rev. Stat. § 9:5606 is not specifically cited in the removal notice, this is not a new basis for removal jurisdiction, as it falls within the ambit of the ground asserted in Paragraph XV.  *See* Wright & Miller, Fed. Prac. &Proc.: Jurisdiction 3d. § 3733 at 358 ("Completely new grounds for removal jurisdiction may not be added and missing allegations may not be furnished.").

not bring it within three years of the act, omission, or neglect. La. Rev. Stat. § 9:5606.  Further, peremptive statutes are not subject to suspension.  *Reeder v. North*, 701 So. 2d 1291 (La. 1997).

The Court finds that plaintiffs' claims are perempted under any viable legal theory.  Defendants submitted an unrebutted affidavit that plaintiffs purchased the policy at issue in May 1998 and renewed the policy every year thereafter.  (Def.'s Ex. 2).  The peremptive statute, La. Rev. Stat. § 9:5606, became effective three years after Nelson procured the policy but before plaintiffs sustained their uninsured loss.  As noted *supra*, the statute will not apply if plaintiff's cause of action accrued before its effective date in 1991.  *Roger*, 613 So. 2d at 949-50. The central question to be resolved, therefore, is whether plaintiff's cause of action had already accrued when La. Rev. Stat. § 9:5606 became effective in 1991.  That question must be analyzed under article 3492 of the Louisiana Civil Code, which governed the prescription of this type of action before it was supplanted by La. Rev. Stat. § 9:5606.  *See Roger*, 613 So. 2d at 948.  Under article 3492, a plaintiff's cause of action does not accrue until she suffers damage.  *See Cole v. Celotex*, 599 So. 2d 1058, 1064 n.15 (La. 1992) ("[A] *sine qua non* for accrual of a cause of action is damages"); *see also Grenier v. Medical Eng'g*

8

*Corp.*, 243 F.3d 200, 203 (5th Cir. 2001) (a cause of action for negligence accrues when a claimant is able to allege fault, causation, and damages).

Plaintiffs here do not contend in their petition that they suffered any damage until Hurricane Katrina struck in August 2005, and State Farm denied coverage for their losses.  (R. Doc. 1-2).  If the Court accepts plaintiffs' theory that they suffered no damage until 2005, then under article 3492 their cause of action accrued after the effective date of La. Rev. Stat. § 9:5606.  This means that the statute applies to their cause of action, which is fatal to their claims against Nelson because the statute contains a three-year peremptive period that runs from the date of the act, omission, or neglect.  The wrongful acts alleged against Nelson occurred in 1988, when plaintiffs purchased their policy.[3]  Subsequent renewals of insurance policies do not restart the peremptive period on torts committed at the time of initial purchase.  *See Biggers v. Allstate Ins. Co.*, 886 So. 2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So. 2d 377, 382-83 (La. Ct. App. 2003); *see also Bordelon v. The Indep. Order of Foresters*, 2005

---

[3] Even if the Court were to consider the re-inspection of plaintiffs' insured property, which Nelson states in his affidavit occurred in April 1996, as an intervening action, it would still fall outside of the three-year peremption period.

WL 3543815 at *3 (E.D. La. 2005).[4]

Under the express terms of La. Rev. Stat. § 9:5606, regardless of whether a plaintiff sues within one year of discovering her cause of action, the claim is still perempted if the plaintiff does not bring it within three years of the act, omission, or neglect.  The Louisiana Supreme Court has recognized, under an analogous provision of Louisiana's legal malpractice statute, that the peremptive period controls even if plaintiff could not have brought her claim before the period expired.  *Reeder v. North*, 701 So. 2d 1291, 1297 (La. 1997) ("[T]he cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period.").  In *Reeder*, the plaintiff argued that the peremptive period should be suspended for the period of time his case remained on appeal, because he had not yet suffered the adverse judgment that gave rise to his damages.  *Id*.  The Louisiana Supreme Court held that "nothing may interfere with the running of a peremptive period.

---

[4] In his affidavit, Daniel Ruiz does not dispute that, other than renewals, there were no acts or omissions on the part of Nelson that served to restart the prescriptive period under Section 9:5606.  (R. Doc. 9-5).  Nor does he dispute that Nelson's advice, experience, and expertise upon which he relied was from 1988, when he initially purchased his homeowner's policy.  (*Id*.).

It may not be interrupted or suspended . . . ." *Id*. at 1298. The Louisiana Supreme Court laid any resulting inequities at the feet of the Louisiana legislature. *Id*. at 1297.  Louisiana's appellate courts have used this same reasoning in applying La. Rev. Stat. § 9:5606. *Biggers*, 886 So. 2d at 1182.

If, on the other hand, the Court assumes that plaintiffs suffered some injury at the time Nelson allegedly failed to procure adequate insurance, such as by being exposed to uninsured property loss, their claim would still be untimely.  Under that scenario, their cause of action would have accrued in 1988 when Nelson procured the policy, which is before the adoption of La. Rev. Stat. § 9:5606. *See Cole*, 599 So. 2d 1058, 1064 n.15 (noting that in Louisiana the slightest injury is sufficient to support the accrual of a cause of action).  Under those circumstances, prescription would be governed by La. Civ. Code art. 3492, under which the one-year prescriptive period begins to run from when the injury is sustained.  La. Civ. Code. art. 3492. The defense of *contra non valentem* can apply to suspend the running of prescription until plaintiff knew or reasonably should have known that she was the victim of a tort. *Hendrick v. ABC Ins. Co.*, 787 So. 2d 283, 290 (La. 2001).  However, the doctrine applies only in "exceptional circumstances," and a plaintiff "will be deemed to know what [she] could by reasonable diligence

have learned." *Renfroe v. State Dept. of Trans. and Dev.*, 809 So. 2d 947, 953 (La. 2002).

Plaintiffs here, however, do not even argue that they could not reasonably have discovered the terms of their insurance policy in the years since Nelson procured their homeowners insurance for them from State Farm in 1988.  Rather, they argue that they were not a tort victim before Hurricane Katrina, which is an argument that does nothing but place them within the coverage of Section 9:5606.  Accordingly, the Court finds that plaintiffs could reasonably have discovered the terms of their insurance policy in the years since 1988.  Thus, if they suffered an injury at the time that Nelson procured their policy, then plaintiffs' claim is prescribed under article 3492 because they should have known of it more than one year before they brought suit.  Consequently, plaintiffs do not have a reasonable possibility of recovery against Nelson and joinder is thus improper.  The Court therefore finds it has jurisdiction over this matter.

**B.    06-5899: Marcum v. Allstate**

Plaintiffs George and Becky Marcum sued Allstate, their homeowners insurer, and John Carbo Insurance, their insurance agent, after their home was rendered a total loss by Hurricane Katrina.  Allstate, a foreign insurer with neither citizenship

12

nor a principal place of business in Louisiana, contends that Carbo, which is a limited liability corporation with its domicile in Louisiana, is improperly joined because there is no reasonable basis on which plaintiff can state a claim under Louisiana law against Carbo.  Specifically, defendants assert that plaintiffs' claims against Carbo for failure to procure adequate coverage are perempted by the terms of La. Rev. Stat. § 9:5606.

Based on the allegations set forth in plaintiffs' state court petition, the Court finds that their claims against Carbo are perempted.  The unrebutted evidence demonstrates that Allstate's policy was initially issued in May 2002.  (Def.'s Ex. A).  The policy has not changed since its issuance, except to be renewed each successive year.  (*Id.*).  Plaintiffs allege in their petition that Carbo failed to advise them of the availability or need for additional flood coverage and that Carbo directly or indirectly informed them that their policy would cover "all hurricane damages."  (R. Doc. 1-2, at 5).  Since plaintiff alleges misrepresentations were made in connection with the issuance of their homeowner's policy, Carbo's alleged misconduct occurred in May 2002 when it sold plaintiffs the policy.  There are no allegations in the original complaint of any subsequent misrepresentations in connection with renewals.  Accordingly, the renewals do not operate to restart peremption.  *See Biggers*, 886

13

So. 2d at 1182-83 (peremptive period ran from the date of
purchase because the renewal process did not afford the insurance
agent the opportunity to make further misrepresentations about
the policy); *Bel*, 845 So. 2d at 382-83 (same).  The Marcums'
claims against Carbo, which were filed in state court on July 28,
2006, are therefore barred by the three-year peremption of La.
Rev. Stat. § 9:5606.  As such, the Court finds that plaintiff
does not have a reasonable possibility of recovery against Carbo
and that Carbo is improperly joined.  The Court thus has
jurisdiction over this matter.  Because removal was not improper
in this matter, plaintiffs have not demonstrated that they are
entitled to attorney's fees in this matter.

> C.   **06-6522: Prest v. State Farm**

Plaintiff Robert Prest III sued State Farm, his homeowners
and flood insurer, and Brian R. Bubrig Insurance Agency, his
insurance agent, after his property was significantly damaged by
Hurricane Katrina.  State Farm, a foreign insurer with neither
citizenship nor a principal place of business in Louisiana,
contends that Bubrig, which is domiciled in Louisiana, is
improperly joined because there is no reasonable basis on which
plaintiff can state a claim under Louisiana law against Bubrig.
Specifically, State Farm asserts that Prest's claims against
Bubrig for failure to procure adequate homeowners and flood

14

coverage are perempted by the terms of La. Rev. Stat. § 9:5606. See text, *supra.*

The unrebutted evidence demonstrates that Prest's homeowner's policy was initially issued in 1982. (Def.'s Ex. B). As discussed above, when, as here, plaintiff purchased an insurance policy before La. Rev. Stat. § 9:5606 became effective in 1991, the Court looks to article 3492 of the Louisiana Civil Code, which governed the prescription of this type of action before it was supplanted by La. Rev. Stat. § 9:5606. *See Roger*, 613 So. 2d at 948. Under article 3492, a plaintiff's cause of action does not accrue until she suffers damage. *See* discussion *supra.* In this case, regardless of whether plaintiff's cause of action accrued when Hurricane Katrina struck or when State Farm issued his homeowner's policy in 1982, his claims against Bubrig are time-barred.

If, as plaintiff alleges, he suffered no damage until August 2005, then Section 9:5606 applies, which is fatal to his claims against Bubrig as to his homeowner's policy because the statute contains a three-year peremptive period that runs from the date of the act, omission, or neglect. Bubrig avers that Prest's homeowner's policy has not changed since its issuance in 1982, except to be renewed each successive year. (Def.'s Ex. B). Prest does not contradict this assertion in his affidavit, which

15

contains no evidence of any act within three years of Hurricane Katrina that could serve to restart the peremptive period.   (R. Doc. 7, at 29-30).   Because subsequent renewals of insurance policies do not restart the peremptive period on torts committed at the time of initial purchase, see *supra*, the wrongful acts alleged against Bubrig occurred in 1982, when plaintiff purchased his homeowner's policy.   These acts are clearly peremptied under Section 9:5606.

Even if the Court assumes that plaintiff suffered an injury at the time Bubrig allegedly failed to procure adequate homeowners coverage in 1982, his claim would still be untimely. Under those circumstances, prescription would be governed by La. Civ. Code art. 3492, under which the one-year prescriptive period begins to run from when the injury is sustained.  La. Civ. Code. art. 3492.  As discussed *supra*, the defense of *contra non valentem* can apply to suspend the running of prescription until plaintiff knew or reasonably should have known that she was the victim of a tort.  Here, the sworn evidence indicates that the homeowner's policy terms were unchanged since 1982.  Moreover, plaintiff does not that argue he could not reasonably have discovered the terms of his homeowner's policy in the 23 years before Hurricane Katrina.  Accordingly, the Court finds that the running of prescription was not tolled under the defense of

*contra non valentem* , and thus plaintiff's claims are prescribed under article 3492 because he should have known of them more than one year before he brought suit.

Finally, plaintiff's claims against Bubrig as to his flood policy are similarly perempted under Section 9:5606.  The unrebutted evidence demonstrates that the flood policy was first issued in 1998.  (Def.'s Ex. B).  For the reasons already discussed, defendants have shown that no intervening action took place since 1998 that could have served to restart the three-year peremptive period for Prest's flood policy.  Consequently, the Court finds that plaintiff does not have a reasonable probability of recovery against Bubrig for either his homeowners or flood insurance claims.  Bubrig is therefore improperly joined, and the Court has jurisdiction over this matter.

### D.   06-7248: Louisiana Medical Management v. Bankers Insurance

Plaintiff Louisiana Medical Management Corporation sued Bankers Insurance Company, its commercial property insurer, and Dan Burghardt Insurance Agency, its insurance agent, after plaintiff suffered damage as a result of Hurricane Katrina. Bankers Insurance Company, a foreign insurer with neither citizenship nor a principal place of business in Louisiana, contends that Burghardt, which is domiciled in Louisiana, is

improperly joined because there is no reasonable basis on which plaintiff can state a claim under Louisiana law against Burghardt.  Defendants assert that Louisiana Medical Management's claims against Burghardt for failure to procure adequate coverage are perempted by the terms of La. Rev. Stat. § 9:5606.  See text, *supra.*

Based on the allegations set forth in plaintiff's state court petition, the Court finds that its claims against Burghardt are perempted.  The unrebutted evidence demonstrates that Bankers Insurance's policy was initially issued in April 2002.  (Def.'s Ex. A).  The policy has not changed since its issuance, except to be renewed each successive year.  (*Id.*).  Plaintiff avers that Burghardt procured a policy that, based on what Bankers Insurance has paid plaintiff on its claims arising from Hurricane Katrina, "has proven itself to be either totally worthless or worth approximately one-tenth of what was represented to be."  (R. Doc. 1-2, at 7).  Plaintiff specifically asserts that Burghardt advised plaintiff "at the time of the purchase of the policy that it would provide coverage for 'everything.'"  (*Id.*).  Since plaintiff alleges misrepresentations were made in connection with the issuance of its commercial policy, Burghardt's alleged misconduct occurred in April 2002 when it sold plaintiff that policy.  There are no allegations in the original complaint of

18

any subsequent misrepresentations in connection with renewals.
Accordingly, the renewals do not operate to restart peremption.
*See Biggers*, 886 So. 2d at 1182-83 (peremptive period ran from
the date of purchase because the renewal process did not afford
the insurance agent the opportunity to make further
misrepresentations about the policy); *Bel*, 845 So. 2d at 382-83
(same).  Louisiana Medical Management's claims against Burghardt,
which were filed in state court on August 24, 2006, are therefore
barred by the three-year peremption of La. Rev. Stat. § 9:5606.
As such, the Court finds that plaintiff does not have a
reasonable possibility of recovery against Burghardt and that
Burghardt is improperly joined.  The Court thus has jurisdiction
over this matter.

     **E.    06-7416: Reed v. State Farm**

     Plaintiff Frances Reed sued State Farm, her homeowners and
flood insurer, and Warren Bloom, her insurance agent, after
plaintiff's home was rendered a total loss by Hurricane Katrina.
State Farm, a foreign insurer with neither citizenship nor a
principal place of business in Louisiana, contends that Bloom,
who is domiciled in Louisiana, is improperly joined because there
is no reasonable basis on which plaintiff can state a claim under
Louisiana law against Bloom.  Specifically, State Farm asserts
that Reed's claims against Bloom for failure to procure adequate

coverage are perempted by the terms of La. Rev. Stat. § 9:5606.
See text, *supra.*

Based on the allegations set forth in plaintiff's state
court petition, the Court finds that her claims against Bloom are
perempted.  The unrebutted evidence demonstrates that Reed's
homeowner's and flood policies were initially issued in May 2003.
(Def.'s Exs. A, B).  Those policies have not changed since their
issuance, except to be renewed each successive year.  (Def.'s Ex.
B).  Plaintiff avers that Bloom provided "false advice" regarding
the availability of higher coverage limits on her flood policy.
Plaintiff does not identify when this alleged conduct took place,
therefore the Court cannot determine from the face of the
pleadings whether the plaintiffs' claims are perempted and that
plaintiffs are unable to prove a set of facts entitling them to
relief.  As such, the Court may "pierce the pleadings and conduct
a summary inquiry." *Smallwood*, 385 F.3d at 573.  The purpose of
the Court's summary inquiry is "only to identify the presence of
discrete and undisputed facts that would preclude [plaintiffs']
recovery against the in-state defendant." *Id.* at 573-74.  Here,
the Court is presented with an unrebutted affidavit that states
Reed did not contact his insurance agent in connection with her
flood policy between May 2003 and the date Hurricane Katrina
struck.  (Def.'s Ex. B).  Furthermore, as there are no

allegations in the original complaint of any subsequent
misrepresentations in connection with plaintiff's renewals, the
renewals do not operate to restart peremption. *See Biggers*, 886
So. 2d at 1182-83 (peremptive period ran from the date of
purchase because the renewal process did not afford the insurance
agent the opportunity to make further misrepresentations about
the policy); *Bel*, 845 So. 2d at 382-83 (same).  Thus, because
Reed's claims against Bloom were not filed in state court until
August 29, 2006, they are barred by the three-year peremption of
La. Rev. Stat. § 9:5606.  As such, the Court finds that plaintiff
does not have a reasonable possibility of recovery against Bloom
and that Bloom is improperly joined.  The Court thus has
jurisdiction over this matter.

     **F.    06-8560: Burse v. Allstate**

     Plaintiff Linda Burse sued Allstate, her flood insurer, and
John Elliot, Jr., her insurance agent, after plaintiff's home was
damaged as a result of Hurricane Katrina.  Allstate, a foreign
insurer with neither citizenship nor a principal place of
business in Louisiana, contends that Elliot, who is domiciled in
Louisiana, is improperly joined because there is no reasonable
basis on which plaintiff can state a claim under Louisiana law
against Elliot.  Specifically, Allstate asserts that Burse's
claims against Elliot for failure to procure adequate coverage

21

are perempted by the terms of La. Rev. Stat. § 9:5606. See text, *supra.*

Based on the allegations set forth in plaintiff's state court petition, the Court finds that her claims against Elliot are not perempted.[5]  Plaintiff asserts that Elliot failed to advise her that she was underinsured for flood damages and that Elliot was negligent in recommending that plaintiff delete her contents coverage in her flood policy.  (R. Doc. 1-2, at 3).  Plaintiff further contends that Elliot failed to inform her of any gaps in her flood coverage, particularly that the contents coverage in her homeowner's policy would not cover contents damaged by flood.  (*Id.*).  Finally, plaintiff claims that Elliot failed to procure requested flood coverage for her contents. (*Id.*).  It is well established under Louisiana law that a plaintiff may recover for his insurance agent's failure to procure requested insurance coverage.  The Louisiana Supreme Court has held: "An insurance agent who undertakes to procure

---

[5] The Court notes that some confusion may have ensued as a result of Allstate's filing two notice of removals in this matter, resulting in two case numbers that were initially assigned to separate Sections of this Court.  *See* Civ. Docket No. 06-8560 (originally assigned to Section R); Civ. Docket No. 06-8580 (originally assigned to Section D).  The cases, which arise from the same state court petition, were consolidated in this Section, as it was initially assigned the case with the lower number.  For purposes of this motion, the Court reviews the parties' filings in both matters.

insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested coverage." *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730 (La. 1973).  An insurance agent is more than a "mere order taker" for the insured.  *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 230 (5th Cir. 1990) (quoting *Durham v. McFarland, Gay and Clay Inc.*, 527 So.2d 403, 405 (La. Ct. App. 1988)).  Citing *Karam*, the Fifth Circuit stated:

> In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured.

*Offshore Prod. Contractors*, 910 F.2d at 229.

Broadly construing plaintiff's petition in her favor, the Court cannot conclude that there is no reasonable probability that plaintiff can satisfy each of these three elements.  As Burse's insurance agent of record, Elliot undoubtedly entered into an agreement with Burse to procure her insurance coverage. As such, Elliot's fiduciary duties to Burse as her insurance

agent included advising Burse with regard to recommended
coverage.  *Id.* at 230.  When an agent has reason to know the
risks against which an insured wants protection and has
experience with the types of coverage available in a particular
market, "we must construe an undertaking to procure insurance as
an agreement by the agent to provide coverage for the client's
specific concerns."  *Id.*  (citing to several Louisiana appellate
court decisions).  In her petition, plaintiff alleges that Elliot
failed to obtain requested coverage for her contents in the case
of flood damage, despite his purported representation to the
contrary.  Defendants allege in their notice of removal that
plaintiff requested that Elliot delete her flood contents
coverage, but without any evidence to buttress their assertion,
this is a question of fact as to who said what when.  There is
thus an arguably reasonable basis to predict that, if the
allegations are true, Louisiana law might hold Elliot liable for
his failure to recommend or procure the requested flood
insurance.  As Judge Edith Jones wrote in *Offshore Production
Contractors*, *supra*, "Where an insurance broker has experience in
a particular field, that broker should possess reasonable
knowledge of the general types of policies available, understand
their different terms, and explore the specific coverage
available in the area in which the client seeks to be protected."

*Id.* at 231.  Furthermore, there is no evidence that Elliot ever notified plaintiff before Hurricane Katrina of his alleged failure to procure the requested flood contents coverage. Finally, in light of plaintiff's allegation that Elliot represented that plaintiff's contents were covered in case of flood loss, there is an arguably reasonable basis to predict that Louisiana law might hold that Elliot's actions led plaintiff to believe she was insured for contents damaged by flood.  Thus, plaintiff has made sufficient allegations to reasonably predict that a Louisiana court might find Elliot liable to plaintiff under Louisiana law.

Defendants, however, contend that even if Elliot owed a duty to the plaintiff, any claim arising from that duty is perempted under La. Rev. Stat. § 9:5606.  It is not clear from the face of the complaint when plaintiff's flood policy was changed. Moreover, defendants fail to provide any evidence as to peremption beyond a bald assertion in their notice of removal that the policy was altered in 2004.  Without actual evidence to support this assertion, the Court cannot conclude that plaintiff's claims against Elliot are time-barred.  Therefore, defendants have failed to carry their burden of demonstrating that joinder of the nondiverse defendant was improper.  The Court thus does not have jurisdiction on the basis of the diversity of

the parties.  *See* 28 U.S.C. § 1332.  Therefore, the action is
remanded to state court.

   **G.   Rigamer v. Transcontinental Insurance**

   Plaintiff Gregory C. Rigamer and Associates sued
Transcontinental Insurance Company, its commercial property
insurer, and Beyer-Beeson Insurance Agency, its insurance agent,
after plaintiff suffered damage as a result of Hurricane Katrina.
Transcontinental, a foreign insurer with neither citizenship nor
a principal place of business in Louisiana, contends that Beyer-
Beeson, which is domiciled in Louisiana, is improperly joined
because there is no reasonable basis on which plaintiff can state
a claim under Louisiana law against its insurance agent.
Transcontinental asserts that Rigamer's claims against Beyer-
Beeson for failure to procure adequate coverage are perempted by
the terms of La. Rev. Stat. § 9:5606.  See text, *supra.*

   Based on the allegations set forth in plaintiff's state
court petition, the Court finds that Rigamer's claims against
Beyer-Beeson are not perempted.  Plaintiff avers that Beyer-
Beeson procured a policy that did not provide the requested
coverage and then did not notify plaintiff that it had not
obtained the requested coverage.  (R. Doc. 1-2, at 8).
Specifically, plaintiff contends through the affidavit of its
employee Stacey James that it requested coverage for both Suites

26

100 and 500 in the building where its officers are located.
(Pl.'s Ex. 3).  It is undisputed that Transcontinental's policy
was initially issued in April 2002.  (Pl.'s Ex. 3).  Plaintiff,
however, submits an e-mail from a Transcontinental
representative, written in October 2005, that states Rigamer's
policy was materially amended at the time of renewal in April
2004 such that it only covered Suite 500.  (Pl.'s Ex. 2).  Since
it is the terms included in the April 2004 insurance contract
that form the basis of plaintiff's claims, defendants contend
that Beyer-Beeson's alleged misconduct occurred at that time.  It
is well-established that an insured party is generally
responsible for reading her policy, and she is presumed to know
its provisions.  *See* discussion *supra*.  A prescriptive or
peremptive period will begin to run when the injured party has
constructive knowledge of the facts that would entitle her to
bring a suit.  *See supra*.  Here, the issue is whether Rigamer
knew or should have known from the terms of the April 2004 policy
that it did not reflect Rigamer's communicated intention to have
coverage of both Suites 100 and 500.  The Court cannot conclude
that there is no reasonable possibility that Rigamer could
recover against Beyer-Beeson under state law.  There is a
reasonable possibility that a Louisiana court would find that
Rigamer was not charged with knowledge of a lack of coverage from

the terms of the policy before Hurricane Katrina because the policy was ambiguous on its face.  Notably, Rigamer's policy contained references to both Suites 100 and 500.  It was not until October 2005 that Transcontinental informed Rigamer by e-mail that Transcontinental interpreted the policy procured by Beyer-Beeson as applying only to Suite 500.  Rigamer filed this suit on August 28, 2006, which was within one year of the Transcontinental e-mail and within three years of the material amendment to Rigamer's policy.  The Court finds that there is an arguably reasonable basis to predict that Louisiana law would hold Rigamer's claim to be timely and not perempted by La. Rev. Stat. § 9:5606.  Therefore, defendants have failed to carry their burden of demonstrating that joinder of the nondiverse defendant was improper.  The Court thus does not have jurisdiction on the basis of the diversity of the parties.  *See* 28 U.S.C. § 1332. Defendants do not offer any other basis on which the Court has jurisdiction over this matter.  Therefore, the action is remanded to state court.

### H.    06-9635: Edgecombe v. Allstate

Plaintiffs Franklin Edgecombe and Jeanette Decossas sued Allstate, their homeowners insurer, and Eva Vinsanau, their insurance agent, after their home was rendered a total loss as a result of Hurricane Katrina.  Allstate, a foreign insurer with

28

neither citizenship nor a principal place of business in
Louisiana, contends that Vinsanau, who is domiciled in Louisiana,
is improperly joined because there is no reasonable basis on
which plaintiffs can state a claim under Louisiana law against
Vinsanau.  Specifically, Allstate asserts that plaintiffs' claims
against Vinsanau for failure to procure adequate coverage are
perempted by the terms of La. Rev. Stat. § 9:5606.  See text,
*supra.*

        Based on the allegations set forth in plaintiffs' state
court petition, the Court finds that their claims against
Vinsanau are perempted.  The unrebutted evidence demonstrates
that plaintiffs' homeowners policy was initially issued in
November 2003.  (Def.'s Ex. A).  The policy has not changed,
other than an inflation adjustment, since it was renewed in
November 2004.  (*Id.*).  Plaintiffs assert that Vinsanau failed to
inform them of the existence of certain language in their
homeowners policy, namely the "concurrent causation clause."  (R.
Doc. 1-2, at 3).  Since plaintiffs allege misrepresentations were
made in connection with the issuance of their November 2004
homeowner's policy, Vinsanau's alleged misconduct occurred at
that time.  It is well-established that an insured party is
generally responsible for reading her policy, and she is presumed
to know its provisions.  *See* discussion *supra*.  A prescriptive or

peremptive period will begin to run when the injured party has constructive knowledge of the facts that would entitle her to bring a suit. *See supra*. Here, plaintiff does not dispute that their homeowner's policy has contained a "concurrent causation clause" since the November 2004 renewal. Moreover, subsequent renewals do not operate to restart peremption. *See Biggers*, 886 So. 2d at 1182-83. Because those claims against Vinsanau were not filed in state court until August 28, 2006, they are barred by the one-year peremption of La. Rev. Stat. § 9:5606.

Finally, plaintiffs' contention that they did not receive a copy of their policy until after Hurricane Katrina struck in August 2005 does not serve to restart peremption. Plaintiffs offer no evidence to support this bare allegation. By contrast, Vinsanau states in her affidavit that she provided plaintiffs with a copy of their policy. (Def.'s Ex. A). The Court therefore finds that this claim is rebutted by evidence. As such, plaintiff does not have a reasonable possibility of recovery against Vinsanau and Vinsanau is improperly joined. The Court thus has jurisdiction over this matter.


**IV.  CONCLUSION**

For the foregoing reasons, plaintiffs' motions to remand are DENIED, except for the motions in Civ. Docket Nos. 06-8560 and

06-8668, which are GRANTED.

New Orleans, Louisiana, this <u>16th</u> day of January, 2007.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE